**In the Matter of PENN CENTRAL TRANSPORTATION COM-PANY, Debtor.**

**In re Proposed Settlement with IRVING TRUST COMPANY, Trustee.**

**No. 70-347.**

United States District Court,
E. D. Pennsylvania.

Nov. 18, 1971.

Eugene E. Anderson, Jr., Dennis Faucher and John E. Wallace, Jr., Philadelphia, Pa., for the trustees, Penn Central Transportation Co.

Dilworth, Paxson, Kalish, Levy & Coleman by David Pittinsky, Philadelphia, Pa., and Winthrop, Stimson, Putnam & Roberts by Stephen Weiner, New York City, for Irving Trust Co., trustee.

Morgan, Lewis & Bockius by John N. Schaeffer, Jr., Philadelphia, Pa., for The Fidelity Bank.

Ballard, Spahr, Andrews & Ingersoll by Richardson Blair, Philadelphia, Pa., for Girard Trust Bank.

Fox, Rothschild, O'Brien & Frankel by Nochem S. Winnet, Philadelphia, Pa., for First National City Bank of New York.

Homer Kripke, for Oscar Lasdon, bondholder of Pittsburgh & Lake Erie Railroad Co.

Tate & Ervin by Spencer Ervin, Jr., Philadelphia, Pa., for Richard Joyce Smith, Trustee, New York, New Haven & Hartford Railroad.

Dechert, Price & Rhoads by Norma Shapiro, Philadelphia, Pa., for Penn Central Co.

In Proceedings for the Reorganization of a Railroad

OPINION AND ORDER NO. 497

FULLAM, District Judge.

The Trustees are the owners of, *inter alia,* 161,698 shares of the common stock

of the Pittsburgh and Lake Erie Railroad Company ("P & LE"), pledged as collateral under two collateral trust indentures, dated April 15, 1965 and April 15, 1968, respectively, in which the Irving Trust Company is indenture trustee. When the reorganization petition was filed, the Debtor owed approximately $15,441,700; bond interest was current; and the Debtor would have been entitled to withdraw 7,278 shares of P & LE stock from the pledge.

Under the terms of the trust indentures, in the absence of default, the Debtor is entitled to vote the stock, and is entitled to receive and retain all dividends paid on the stock. Pursuant to Order No. 13 herein, during the pendency of these proceedings, dividends paid on the pledged stock have been held in escrow; as of October 14, 1971, the escrow account contained $1,256,457.67. Based upon past performance, the stock held as collateral can be expected to earn dividends of between $900,000 and $1,200,000 per annum.

The Trustees now propose to enter into an agreement with the Irving Trust Company, indenture trustee, for the amicable resolution of issues relating to the disposition of the escrow fund and future additions thereto. In essence, under the proposed agreement, the present balance in the escrow fund would be divided equally between the Trustees of the Debtor and the Irving Trust Company as indenture trustee. The sum payable to the indenture trustee would be used to make payments on account of bond interest now in default (and certain administrative expenses). Future dividends received on the stock would be used to meet bond interest payments, until the interest payments were not more than six months in arrears; the balance would be paid to the Trustees. Thus, the Trustees would receive immediately approximately $628,000 in cash, and could expect to receive, during the term of the agreement, additional sums aggregating in excess of $1,100,000.

The proposed settlement is opposed on behalf of one bondholder, whose counsel argues that the Trustees should be required to issue trustees certificates to replace the withdrawn funds, on the authority of In the Matter of Central Railroad Company of New Jersey v. Manufacturers Hanover Trust Company, 421 F.2d 604 (3d Cir. 1970). In my opinion, there is no merit to this argument. This is not a situation in which the value of collateral is being impaired. The pledged stock would remain pledged; indeed, as noted above, the bondholders appear to have more security than they bargained for. The bondholders have no right to the dividends on the pledged stock, at least in the absence of default; and they surely cannot be heard to complain, if interest payments are to be resumed.

The more serious question is whether the proposed settlement is not unduly favorable to the bondholders. At first blush, it might seem unduly preferential to permit the payment of interest to one group of bondholders, when interest is not being paid under other indentures. Upon close analysis, however, I am satisfied that the Trustees' proposal would be in the best interests of the estate, and all of its creditors. The subsisting tax allocation agreement between P & LE and the Trustees (See Document Nos. 579, 954, and Order No. 201 herein) provides cash advantages to the estate greatly in excess of the drain thereon which would be caused by current payment of bond interest in this instance. The agreement now under consideration would remove a substantial threat to the continued efficacy of the tax allocation agreement.[1] The Court is therefore

---

1. In order to qualify for consolidated-return treatment, the Trustees must have ownership and actual control of at least 80% of P&LE shares. I.R.C. §§ 1501, 1504(a). An argument can be made that this requirement might not be met if pledged stock is burdened by restrictions imposed by reason of default (even though, as here, the orders of the reorganization court prevent assertion of default). Of course, it can also be argued that the exercise by the reorganiza-

dealing with a unique situation in which temporary preference of one group of bondholders is actually advantageous to all.

On balance, I am satisfied that the proposed settlement should be approved.

tion court of its power to prevent the assertion of defaults has the effect of continuing the Trustees in that degree of ownership and control required for a

consolidated return. The proposed settlement agreement removes any doubt on this score, and avoids litigation.